HAZEN S. PINGREE, MAYOR, ETC., v. THE BOARD OF EDUCATION OF THE CITY OF DETROIT.

*Schools and school-districts—Constitutional law—Board of education—Mayor as ex officio member—Veto power.*

Act No. 394, Local Acts of 1893, which gives to the mayor of the city of Detroit, as *ex officio* member of the board of education, certain veto power, is constitutional.

Appeal from Wayne. (Hosmer, J.) Argued March 9, 1894. Decided March 20, 1894.

Bill to restrain the defendant from paying out money or entering into contracts. Complainant appeals from order sustaining demurrer. Decree reversed, and demurrer overruled, with leave to answer. The facts are stated in the opinion.

*John B. Corliss,* for complainant.

*W. E. Baubie,* for defendant.

LONG, J.  The act relative to free schools in the city of Detroit was amended ·in 1893[1] by adding a section thereto, to stand as section 26, as follows:

"Every resolution or proceeding of the said board of education, whereby any liability or debt may be created, or originating the disposal or expenditure of property or money, shall, before it takes effect, be presented by the secretary of said board to the mayor of said city of Detroit.  If the mayor approve thereof, he shall thereon write his approval, with the date thereof, and sign the same, and thereupon such resolution or proceeding shall go into effect; and such as' he shall not so approve and sign he shall return to the board, with his objections thereto in writing, under cover, sealed, and addressed to said board.  If the mayor shall neglect to approve, as aforesaid, any resolution or proceeding, or return the same as aforesaid, with his objections, within five days after the same shall have been presented to him by the secretary as before provided, the same shall go into effect.  Upon the return, as aforesaid, of any proceeding, the board receiving such matter with the objections of the mayor shall proceed to reconsider the vote by which the same was passed and adopted, and if, after such reconsideration, two-thirds of all the members elected to said board shall agree by ayes and nays, which shall be entered of record, to pass or adopt the same, it shall go into effect.  The secretary shall, at the time of presenting any resolution or proceeding to the mayor, make a certificate in which he shall specify the day on which the same was so presented, and such certificate shall be reported to the said board, and recorded in the proceedings of said board."

The board of education, entirely disregarding this provision of the statute, allowed large sums of money, and directed warrants therefor, for salaries of teachers and other employés of the district, and for payment of accounts against the district, directed contracts to be entered into for the ensuing year, and also directed a site to be purchased for a school building.  The attention of the board was called to this provision of the statute, and its secretary

---

[1] Act No. 394, Local Acts of 1893.

was directed not to present these matters to the mayor for his approval. The mayor thereafter filed his bill in the Wayne circuit court, in chancery, praying that an injunction issue to restrain the board, its officers and agents, from paying out moneys, or entering into contracts or agreements whereby any debt or liability might be created, in pursuance of any resolution or proceeding of the board. Demurrer was interposed and sustained, and the bill dismissed. Complainant appeals. The sole contention is that this amendment is unconstitutional.

By Act No. 233, Laws of 1869, the mayor was made *ex officio* member of the board of education, but given no vote thereon. This act provided for two inspectors from each ward. The act was amended by Act No. 314, Local Acts of 1881, limiting the number of inspectors to 12, to be elected at large. It was again amended by Act No. 310, Local Acts of 1889, providing for one inspector from each ward. This continued in force, and the mayor continued to be a member *ex officio*, with no power to vote thereon, until the amendment of 1893 was passed. During this time the school-district continued to be, and still is, coextensive with the city. Section 4, art. 13, of the Constitution provides:

"The Legislature shall, within five years from the adoption of this Constitution, provide for and establish a system of primary schools, whereby a school shall be kept, without charge for tuition, at least three months in each year in every school-district in the State, and all instruction in said schools shall be conducted in the English language."

Section 5 of that article also provides:

"A school shall be maintained in each school-district at least three months in each year. Any school-district neglecting to maintain such school shall be deprived for the ensuing year of its proportion of the income of the primary school fund, and of all funds arising from taxes for the support of schools."

Section 1, art. 11, provides:

"There shall be elected annually on the first Monday of April, in each organized township, * * * one township clerk, who shall be *ex officio* school inspector, * * * one school inspector," etc.

Article 15, § 13, provides:

" The Legislature shall provide for the incorporation and organization of cities and villages, and shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit."

Section 14 of the same article provides:

" Judicial officers of cities and villages shall be elected, and all other officers shall be elected or appointed, at such time and in such manner as the Legislature may direct."

So far as affecting the question under consideration, these are the only provisions of the Constitution. It is contended by counsel for the defendant that three things are especially provided for by these provisions of the Constitution, to wit, the school inspector, the school-district, and the school system, and that any educational system which undertakes to ignore them, supersede them, or disregard them is unconstitutional. As we understand it, counsel means by this contention that no one but school inspectors can have a place on the board (except township clerks, who are made members by the Constitution); that the school system must be uniform throughout the State; and that the school-districts must be kept as separate and distinct entities from other municipal corporations organized for other local purposes.

It is apparent that the Legislature has not so construed these constitutional provisions, for, in many particulars, these principles have been departed from by numerous acts. By Act No. 344, Laws of 1871, relative to free schools in the city of Grand Rapids, the mayor of that city was made a trustee, and *ex officio* member of the

board of education. Under this act, being a trustee, he was eligible to the office of president of the board. By section 11 of that act the office of school inspector was abolished. The act was amended by Act No. 381, Local Acts of 1885, and by the amendment the president of the board was given the veto power. By Act No. 380, Local Acts of 1889, the mayor of Alpena is made president of the board of education, and the trustees elected constitute the board, and, by express provision of the statute, succeed to and exercise all the powers and perform all the duties of school inspectors of the city. Other instances could be cited where the Legislature has provided that the mayor shall be a member of the board of education.

But these are not the only acts of the Legislature which, in a measure, have given a different interpretation to these provisions of the Constitution than that contended for. Uniformity of districts has not been kept up; graded schools have been established; boundaries of districts have been changed and fixed by the Legislature; and the qualifications of electors at school meetings have been fixed, limiting the classes entitled to vote, and providing exceptional methods of electing officers. These acts have been upheld by this Court. *Stuart v. School-District,* 30 Mich. 69; *Mudge v. Jones,* 59 Id. 165; *Belles v. Burr,* 76 Id. 1; *Perrizo v. Kesler,* 93 Id. 280; *Keweenaw Ass'n v. School-District,* 98 Id. 437. In *Perrizo v. Kesler, supra,* it was said:

"The Constitution of 1850 left to the Legislature, as did the preceding Constitution, the establishment of a system of primary schools, restricting the Legislature only by providing that a school shall be kept, without charge for tuition, at least three months in each year, and that all instruction in said schools shall be conducted in the English language."

This was no new rule of interpretation of these provisions of the Constitution. *Belles v. Burr, supra.*

These cases were cited, reviewed, and affirmed by Mr. Justice HOOKER in *Keweenaw Ass'n v. School-District, supra.*

It is apparent that, with the restrictions mentioned in *Perrizo v. Kesler, supra,* the whole primary school system was confided to the Legislature by the Constitution. Undoubtedly, the Legislature believed that, with this veto power resting in the mayor, a better and more economical administration of the affairs of the schools of Detroit could be obtained. It is not for this Court to question the wisdom of the Legislature in that regard. It was within the province of the Legislature to make the mayor *ex officio* member of the board of education, and give him the veto power.

The decree of the court below must be reversed, and the demurrer overruled. Defendant will have 20 days to answer the bill. The court below will be directed to issue the injunction prayed, restraining the board from acting, except within the provisions of section 26 of the amendatory act of 1893, until the further order of the court.

The other Justices concurred.